# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

## 2024 CA 0099

## PLAQUEMINES PORT, HARBOR & TERMINAL DISTRICT

### VERSUS

## STATE OF LOUISIANA, DEPARTMENT OF TRANSPORTATION & DEVELOPMENT & PLENARY INFRASTRUCTURE BELLE CHASSE, LLC

Judgment Rendered: **SEP 2 0 2024**

Appealed from the
19th Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Docket No. 731886

The Honorable Tiffany Foxworth-Roberts, Judge Presiding

| | |
|---|---|
| Dannie P. Garrett III<br>Baton Rouge, Louisiana | Counsel for Plaintiff/Appellant,<br>Plaquemines Port, Harbor &<br>Terminal District |
| Jose R. Cot<br>George Imbraguglio, Jr.<br>New Orleans, Louisiana | Counsel for Defendant/Appellee,<br>State of Louisiana, Department of<br>Transportation & Development |
| Christopher K. LeMieux<br>Johanna Elizabeth Lambert<br>Hannah M. Marler<br>New Orleans, Louisiana | Counsel for Defendant/Appellee,<br>Plenary Infrastructure Belle<br>Chasse, LLC |

BEFORE: WOLFE, MILLER, AND GREENE, JJ.

Wolfe, J. concurs without reasons.
GREENE, J. concurs without reasons.

**MILLER, J.**

This matter is before us on appeal by plaintiff, Plaquemines Port, Harbor & Terminal District ("the Port"), from a judgment of the trial court granting peremptory exceptions of prescription in favor of defendants, the State of Louisiana Department of Transportation and Development ("the DOTD") and Plenary Infrastructure Belle Chasse, LLC ("Plenary"), and dismissing the Port's claims against them with prejudice. For the reasons that follow, we dismiss the appeal.

## FACTS AND PROCEDURAL HISTORY

In March of 2008, the DOTD published a "Louisiana Statewide Transportation and Infrastructure Plan – Review and Status Report," which identified the Belle Chasse Tunnel project as an unfunded priority "Megaproject." The Secretary of the DOTD subsequently issued a separate report determining that it was in the best interest of the taxpayers to solicit a proposal for a public private partnership to deliver the Belle Chasse Bridge & Tunnel Replacement Project, which involved replacing the existing tunnel and adjacent bridge with a fixed 4-lane bridge, at an estimated cost of $122,000,000.00.[1] Based on its studies, the DOTD anticipated that through a public-private partnership, bridge tolls would cover future operations and maintenance costs until the toll revenue bonds to construct the bridge were paid. The report indicated that, at that point, the DOTD would then assume responsibility for operations and maintenance costs through its regular capital and operating budgets. In 2017, the DOTD applied for an "INFRA Grant" from the United States Department of Transportation requesting $50,000,000.00 to assist in funding the project. The DOTD submitted numerous letters in support of its application, including a letter dated October 31, 2017, from the Executive Director of the Port, Maynard "Sandy" Sanders, who expressed

---

[1]The DOTD's initiation of a public-private partnership appears to be the first instance of such a partnership in the State of Louisiana.

2

"strong support" for the grant. The DOTD's application was approved, and it was awarded $45,000,000.00 for the the project. In June of 2018, the DOTD implemented a public outreach program to gain additional insights from the traveling public within the community to ensure the project's success.

Against this backdrop, in December of 2019, the DOTD and Plenary entered into a Comprehensive Agreement ("the contract") for the Belle Chasse Bridge & Tunnel Replacement Public-Private Partnership Project, Plaquemines Parish, State Project No. H.004791 ("the Project") pursuant to La. R.S. 48:250.4. Work began on the Project shortly thereafter in 2020.

On May 10, 2023, the Port filed a "Petition for Declaratory Judgment and Permanent Injunction" contending that the DOTD violated La. R.S. 48:2084.15 by approving the Project without obtaining its written agreement.[2] The Port thus sought a declaration that the contract was invalid, unenforceable, and null and void, and that a permanent injunction issue enjoining the DOTD and Plenary from taking any further action toward completion of the Project, unless and until the Port provides its written consent. On August 1, 2023, the Port amended its petition to clarify that it was seeking a declaration that the contract was an absolute nullity.[3]

The DOTD and Plenary responded by filing peremptory exceptions of prescription contending that the Port's claims seeking declaratory relief and issuance of an injunction precluding any further work on the contract, which were

---

[2]Pursuant to the Plaquemines Parish Government Charter, the Plaquemines Parish Council serves as the sole governing authority for the Plaquemines Parish Port, Harbor and Terminal District. In September of 2020, the Port expressed concerns relating to the tolls for the Project. Thereafter, on September 24, 2020, and again on August 12, 2021, the Plaquemines Parish Council unsuccessfully attempted to pass a resolution to initiate litigation related to the Project. However, on March 9, 2023, it was able to garner enough support to pass the resolution, which resulted in the filing of the instant suit.

[3]Absolute nullity of a contract may be invoked by any person. La. C.C. art. 2030. An absolutely null contract, or a relatively null contract that has been declared null by the court, is deemed never to have existed. The parties must be restored to the situation that existed before the contract was made. If it is impossible or impracticable to make restoration in kind, it may be made through an award of damages. La. C.C. art. 2033. Here, the Port is not a party to the contract.

3

asserted three and a half years after the contract was entered, are prescribed based on equitable principles of waiver, mootness, estoppel, and laches. Plenary additionally filed peremptory exceptions of no cause and no right of action. The Port opposed the exceptions of prescription contending that the contract is an absolute nullity and is thus not subject to prescription.

Following a hearing on October 11, 2023, the trial court sustained the exceptions of prescription by the DOTD and Plenary, finding that the Port's claims were subject to a one-year prescriptive period, and that the Port failed to timely assert those claims.[4] In support of its findings, the trial court relied on Airline Construction Company v. Ascension Parish School Board, 568 So. 2d 1029 (La. 1990),[5] the 2017 letter of support by Executive Director Sanders, and the fact that multiple public hearings were held during the approval process affording the Port ample opportunity to appear and object. In light of the trial court's ruling, Plenary withdrew its exceptions of no right and no cause of action. On October 25, 2023, the trial court signed a judgment granting the exceptions of prescription and

---

[4]Although the transcript indicates that no exhibits were filed at the hearing, the DOTD and Plenary introduced the attachments filed in support of their exceptions with no objection. Additionally, counsel for the DOTD presented the trial court with six photographs of the bridge construction to demonstrate "the magnitude of the project." The photographs were marked as DOTD Exhibit 1 in globo and were lodged with the record in this appeal without objection.

[5]In Airline, a public bid case where an unsuccessful bidder attempted to challenge the award of a public contract to another bidder, the Supreme Court held that:

> [A]n unsuccessful bidder on a public contract who wishes to obtain relief because of the rejection of its bid must seek injunctive relief at a time when the grounds for attacking the wrongful award of the contract were known or knowable to the bidder and when corrective action as a practical matter can be taken by the public body.

Airline Construction Co., 568 So. 2d at 1035.

The Court further identified the following factors to utilize when determining the timeliness of a suit for injunction, which are dependent on the facts and circumstances of the particular case, including, among other things, the knowledge possessed by the attacking bidder concerning the wrongful award of the contract, the point in time the bidder acquired this knowledge, the point in time that the public body became indebted to the successful bidder, and the time period between the awarding of the contract and the completion of construction. Airline Construction Co., 568 So. 2d at 1035.

4

dismissing the Port's claims against the DOTD and Plenary with prejudice. The trial court issued written reasons for its judgment on November 7, 2023.

The Port now appeals, contending that the trial court erred in: (1) relying on Airline to determine that an action on the contract was subject to a one-year prescriptive period; (2) accepting the letter written by the former Executive Director of the Port into evidence; and (3) making certain findings of fact, which it contends are not supported by the evidence introduced at the hearing.

## DISCUSSION

### Prescription

Liberative prescription is a mode of barring actions as a result of inaction for a period of time. La. C.C. art. 3447. Ordinarily, a party urging an exception of prescription bears the burden of proving that the prescriptive period has elapsed. However, if the petition shows that it is prescribed on its face, then the burden shifts to the plaintiff to prove that the prescriptive period has not elapsed. See Duckworth v. Louisiana Farm Bureau Mutual Insurance Company, 2011-2835 (La. 11/2/12), 125 So. 3d 1057, 1072.

Evidence may be introduced to support or controvert the exception of prescription when the grounds thereof do not appear from the petition. La. C.C.P. art. 931. In the absence of evidence, the exception must be decided on the facts alleged in the petition, which are accepted as true. Duckworth, 125 So. 3d at 1072. When, as here, evidence is received at the trial of the exception, the appellate court reviews the trial court's factual findings under the manifest error-clearly wrong standard. Brecheen v. Skok, 2022-0624 (La. App. 1st Cir. 12/22/22), 367 So. 3d 716, 718, writ denied, 2023-00404 (La. 5/16/23), 360 So. 3d 838.

### Public-Private Partnerships

Because public revenue, including federal funds, has not kept pace with the state's growing transportation system needs, the legislature created the Louisiana

Transportation Authority to pursue alternative and innovative funding sources, including but not limited to public-private partnerships, tolls, and unclaimed property bonds to supplement public revenue sources and to improve Louisiana's transportation system. See La. R.S. 48:2072(B).

The legislature authorized the Louisiana Transportation Authority to pursue public-private partnerships to supplement public revenue sources, to pursue alternative and innovative funding sources, including user fees to improve Louisiana's transportation system, and to contract with private entities for the development or operation of transportation facilities will provide significant public benefit for the citizens of Louisiana by making additional transportation facilities available to the public and minimizing the need for the imposition of additional taxes. The legislature additionally found that authorizing private entities to develop or operate transportation facilities will result in the construction of transportation facilities more quickly at reduced costs, thereby benefitting the public safety and welfare of the citizens of Louisiana. See La. R.S. 48:2072(C).

The Louisiana Transportation Authority is placed within the DOTD and shall perform and exercise its powers, duties, functions, and responsibilities in the manner provided for agencies transferred in accordance with the provisions of La. R.S. 36:801. La. R.S. 36:509(E). The DOTD may solicit proposals for public-private partnership projects for a transportation facility if the Secretary determines it is in the best interest of the taxpayers, and with approval of the House and Senate transportation, highways and public works committees. La. R.S. 48:250.4(A)(1). Prior to executing a contract for a public-private partnership, the DOTD shall receive approval from the House and Senate transportation, highways and public works committees to enter into the contract. La. R.S. 48:250.4(A)(2). If the public-private partnership project is located within the jurisdiction of an existing port, harbor and terminal district, the mutual written agreement of the port, harbor

6

and terminal district is required before the authority (DOTD) approves the transportation facility.  See La. R.S. 48:2084.15.

## Mootness

Through its petition, the Port sought a declaration that the contract was an absolute nullity and that a permanent injunction issue enjoining the DOTD and Plenary from taking any further action toward completion of the Project. However, we must first address whether the Port's claims are moot.

In the interest of judicial economy, an appellate court may consider the possibility of mootness on its own motion and dismiss the appeal if the matter has become moot.[6]  Russell v. Cantrelle, 2019-0284 (La. App. 1st Cir. 2/21/20), 2020 WL 859515, *2, n.8 (unpublished), citing Tobin v. Jindal, 2011-0838 (La. App. 1st Cir. 2/10/12), 91 So. 3d 317, 321 n.7.  An issue is moot when a judgment or decree on that issue has been deprived of practical significance or made abstract or purely academic.  Felder v. Political Firm, L.L.C., 2014-1266 (La. App. 1st Cir. 4/24/15), 170 So. 3d 1022, 1027, citing Tobin, 91 So. 3d at 321.  Otherwise stated, a case is moot when a rendered judgment or decree can serve no useful purpose and give no practical relief or effect.  If the case is moot, there is no subject matter on which the judgment of the court can operate; that is, jurisdiction, once established, may abate if the case becomes moot.  The controversy must normally exist at every stage of the proceeding, including the appellate stage.  Stevens v. St. Tammany Parish Government, 2016-0197 (La. App. 1st Cir. 1/18/17), 212 So. 3d 562, 566-567, citing In re E.W., 2009-1589 (La. App. 1st Cir. 5/7/10), 38 So. 3d 1033, 1037.

It is well settled that courts will not decide abstract, hypothetical, or moot controversies, or render advisory opinions with respect to controversies.  K Construction, Inc. v. City of Slidell, 2020-0198 (La. App. 1st Cir. 11/6/20), 315 So.

---

[6]In its peremptory exception of prescription, the DOTD contended that the Port's claims "are prescribed under the equitable principle of mootness."  Pretermitting the propriety of urging an equitable doctrine in support of an exception of prescription, we raise the issue of mootness on our own motion.

3d 292, 295. Cases submitted for adjudication must be justiciable, ripe for decision, and not brought prematurely. A "justiciable controversy" is one presenting an existing actual and substantial dispute involving the legal relations of parties who have real adverse interests and upon whom the judgment of the court may effectively operate through a decree of conclusive character. K Construction, Inc., 315 So. 3d at 295. A "justiciable controversy" is distinguished from one that is hypothetical or abstract, academic, or moot. K Construction, Inc., 315 So. 3d at 295.

In Stevens, this court was called upon to determine whether the trial court erred in denying a preliminary injunction on the construction of a public works road widening project. See Stevens, 212 So. 3d at 564. During the pendency of the appeal, the parish filed a motion to dismiss the appeal because the road widening project had been substantially completed. Stevens, 212 So. 3d at 566. The petitioners did not dispute that the road widening project had become substantially completed during the pendency of the appeal, but nonetheless opposed the motion urging that their appeal presented important and unresolved issues. Stevens, 212 So. 3d at 567. This court held therein, that:

> In the specific context of a preliminary injunction, courts will not review a case in which only injunctive relief is sought and where the need for the injunctive relief has ceased to be a justiciable issue. See Verdun v. Scallon Bros. Contractors, Inc., 263 La. 1073, 270 So.2d 512, 513 (La. 1972); Walters v. Childers, 214 La. 531, 38 So.2d 160, 161-62 (La. 1948). This is so because an "[i]njunction may be used to prevent but not to correct a wrong; it cannot be employed to redress an alleged consummated wrong or undo what has already been done." Verdun, 270 So.2d at 513.
>
> Thus, when an appeal is taken from an order denying injunctive relief and the act sought to be enjoined is accomplished pending appeal, the appeal must be dismissed as moot. Jackson v. Dobard, 15-0505 (La.App. 4 Cir. 12/9/15), 182 So.3d 1119, 1121 (quoting City of New Orleans Through Dept. of Safety & Permits v. Bd. of Comm'rs of Orleans Levee Dist., 96-0535 (La.App. 4 Cir. 9/26/96), 694 So.2d 975, 977, writ denied, 96-2820 (La. 1/6/97), 685 So.2d 116). See also Bristol Steel & Iron Works, Inc. v. State, Dept. of Transp. & Develop., 507 So.2d 1233, 1235 (La. 1987) (vacating an order

8

enjoining a public works construction contract where the parties conceded that the project was "over ninety percent complete, i.e., substantially complete[,]" and explaining that injunctive relief is not available to enjoin *a fait accompli).*

Stevens, 212 So. 3d at 567-568.

Applying the above jurisprudence, this court determined that where it was undisputed that the road widening project had been substantially completed, the appeal did not raise a present and actual dispute upon which the judgment of the court could "effectively operate through a degree of conclusive character." Stevens, 212 So. 3d at 568. The court thus dismissed the appeal. See Stevens, 212 So. 3d at 568.

In K Construction, Inc., K Construction sought injunctive relief enjoining the City of Slidell from awarding a public works contract in violation of the public bid law. K Construction also sought a declaratory judgment that the City violated the public bid law by not awarding it the contract. The City sought dismissal of the appeal on the basis that it was moot because it had since executed a contract with another contractor. K Construction, Inc., 315 So. 3d at 294-295. At the hearing, the City introduced a copy of the contract awarded, which was authorized by the City Council, and which was in full force and effect. On review, this court, relied on Stevens, noting that:

> [C]ourts will not review a case in which only injunctive relief is sought and where the need for the injunctive relief has ceased to be a justiciable issue [... ] because an injunction may be used to prevent, but not to correct a wrong; it cannot be employed to redress an alleged consummated wrong or undo what has already been done. [...] Thus, when an appeal is taken from an order denying injunctive relief and the act sought to be enjoined is accomplished pending appeal, the appeal must be dismissed as moot.

K Construction, Inc., 315 So. 3d at 295-296.

This court thus held that given the City's actions of entering a binding contract with another party, the appeal did not present an actual dispute upon which the court could effectively operate through a degree of conclusive character.

9

This court thus dismissed the appeal as moot. K Construction, Inc., 315 So. 3d at 296.

Similarly, in Enmon Enterprises, LLC v. City of New Orleans ex rel. New Orleans Aviation Board, 2015-0763 (La. App. 4th Cir. 5/4/16), 194 So. 3d 709, 711, writ denied, 2016-1046 (La. 9/16/16), 206 So. 3d 884, Jani-King, an unsuccessful bidder for a public contract, filed suit seeking injunctive relief prohibiting the public body from awarding or entering the contract with any other bidder and a declaratory judgment that the public body violated the public bid law in awarding the contract to another bidder, Metro. Metro filed a peremptory exception of prescription contending that Jani-King's claims were untimely because the public body had already awarded the contract to Metro, and the public body was legally obligated to execute the contract. The district court maintained the exception finding the petition was untimely. On review, the court of appeal dismissed Jani-King's appeal as moot where both the award and execution of the contract had already occurred. In doing so, the court held that the purpose of an injunction is to forestall future conduct, and when the act sought to be enjoined is accomplished pending appeal, the appeal will be dismissed as moot. Enmon Enterprises, LLC, 194 So. 3d at 710-711. In so finding, the court relied on Verdun v. Scallon Brothers Contractors, Inc., 263 La. 1073, 270 So. 2d 512 (La. 1972), as follows:

> This rule was aptly expressed by the Louisiana Supreme Court in *Verdun v. Scallon Brothers Contractors, Inc.,* 263 La. 1073, 270 So.2d 512 (1972). In *Verdun,* the plaintiff sought to enjoin a contractor from trespassing on plaintiff's property in connection with an adjacent levee repair. However, by the time the case reached the Supreme Court, the construction activities were completed. The Court dismissed the appeal, opining that "the matter is now moot, [and] this court will not review a case where only injunctive relief is sought when the need for that relief has ceased to be a justiciable issue. Injunction may be used to prevent but not to correct the wrong; it cannot be employed to redress an alleged consummated wrong or undo what has already been done." *Id.* at 513. *See also, Roland Const. Co. Inc. v. City of Alexandria,* 90–603 (La.App. [3] Cir. 12/18/91),

591 So.2d 808 (finding in public bid context that appeal was mooted by award and completion of project while appeal was pending).

Enmon Enterprises, LLC, 194 So. 3d at 712.

The court concluded that "Jani-King seeks to enjoin activities that have already occurred" and that no "order issued by this court on an appeal from a preliminary injunction could act to stop what has already been accomplished." Enmon Enterprises, LLC, 194 So. 3d at 712, citing Jackson v. Dobard, 2015-0505 (La. App. 4th Cir. 12/9/15), 182 So. 3d 1119, 1121.

In Bristol Steel & Iron Works, Inc. v. State, Department of Transportation & Development, 507 So. 2d 1233, 1234 (La. 1987), a project bidder brought suit to enjoin a construction contract for the Grammercy Bridge across the Mississippi River. The suit also asked for a declaratory judgment that the contract was null and void because it violated La. R.S. 38:2225. On review, the Supreme Court vacated the injunction where the parties conceded that construction of the bridge was over ninety percent complete, i.e., substantially complete, noting that one "cannot enjoin a fait accompli." Bristol Steel & Iron Works, Inc., 507 So. 2d at 1235.

More recently, in Lamar Advertising of Louisiana, LLC v. Media Choice, LLC, 2023-0874 (La. App. 1st Cir. 4/19/24), 2024 WL 1693610, *1 (unpublished), Lamar sought injunctive relief to prohibit the issuance of a construction permit to erect a billboard. On review, this court held that where the billboard was constructed on the property at the time of the hearing and at the time the trial court issued its ruling, it was impossible for the trial court to grant Lamar's request for injunctive relief. This court thus determined that Lamar's request for injunctive relief was moot. Lamar Advertising of Louisiana, LLC, 2024 WL 1693610 at **3-4.

11

The primary purpose of injunctive relief is to prevent the occurrence of future acts that may result in irreparable injury, loss, or damage to the applicant. Davenport v. Chew, 2023-0036 (La. App. 1st Cir. 9/15/23), 375 So. 3d 973, 975-976. Although an injunction may be used to prevent a wrong, it cannot be employed to correct a wrong, redress an alleged consummated wrong, or undo what has already been done. See Stevens, 212 So. 3d at 567.

In the instant case, the Port was aware of the Project in 2017. The underlying contract between the DOTD and Plenary that the Port seeks to enjoin was entered in December of 2019. The contract has now been in full force and effect for nearly five years and the construction of the Project commenced over four years ago. The photographs of the newly constructed bridge presented by the DOTD at the hearing confirmed that, at the time of the hearing nearly a year ago, the bridge spanned the intracoastal and was substantially complete, as the trial court aptly noted in her reasons for judgment. In the absence of any contradictory evidence by the Port, we find no error in the trial court's determination that the project was substantially complete.

This court cannot undo what has already been done. See Stevens, 212 So. 3d at 567. Because the bridge has been erected, whether the Port is entitled to a permanent injunction is moot. See City of New Orleans v. Board of Directors of Louisiana State Museum, 98-1170 (La. 3/2/99), 739 So. 2d 748, 750 n. 1. Moreover, a judgment rendered now declaring the contract invalid and enjoining work on a nearly competed project can serve no useful purpose and give no practical relief. See Stevens, 212 So. 3d at 567; K Construction, Inc., 315 So. 3d at 295-296. Considering the applicable jurisprudence set forth herein, we find the claims for permanent injunction and declaratory relief sought by the Port are moot.

Accordingly, we pretermit discussion of the Port's remaining assignments of error and dismiss this appeal.

## CONCLUSION

For the above and foregoing reasons, this appeal is dismissed. All costs of this appeal are assessed against the appellant, Plaquemines Port, Harbor & Terminal District.

**APPEAL DISMISSED.**